# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 4, 2014

## STATE OF TENNESSEE v. CECILIA WILLIAMS

**Appeal from the Criminal Court for Shelby County**
**No. 12-01847    Chris Craft, Judge**

---

**No. W2013-02447-CCA-R3-CD  - Filed January 12, 2015**

---

Following a  jury trial, the Defendant, Cecilia Williams, was convicted of three counts of assault and one count of resisting arrest. The trial court sentenced the Defendant to concurrent terms of 11 months and 29 days for each of the assaults and to a consecutive sentence of six months for resisting arrest.  The court ordered split confinement for a period of six months and suspended the remainder of the Defendant's sentence  to supervised probation. On appeal, the Defendant asserts that there was insufficient evidence to support her convictions.  After reviewing the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Cecilia Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alexa Crump, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from an attempt made by Memphis police officers to arrest the Defendant, who was a suspect in a December 2011 robbery. In April 2012, the Shelby County Grand Jury indicted Cecilia Williams[1] ("the Defendant") for three counts of assault, a Class A misdemeanor, and one count of resisting arrest, a Class B misdemeanor.[2] Following a trial conducted August 5-8, 2013, a jury found the Defendant guilty on all four counts listed in the indictment. The trial court ordered the Defendant to serve six months in jail, followed by 11 months and 29 days supervised probation. The Defendant filed a timely motion for new trial, which the trial court denied after a hearing. This timely appeal followed.

## I. Facts

On December 2, 2011, several officers with the Memphis Police Department responded to A1-Express, a local gas station and convenience store, to speak with the store's owner, Andrew Hodge. Two days prior, Mr. Hodge had reported that the Defendant, who was a former employee, and several accomplices had committed a robbery at the location. The officers hoped to obtain additional information from Mr. Hodge about the Defendant's home address so that they could arrest the Defendant for the robbery.

Officer Derek Gary testified that, when he arrived at the store, the Defendant was in the parking lot. After Mr. Hodge identified the Defendant, Officer Gary told the Defendant that she was under arrest and asked her several times to turn around and put her hands behind her back. The Defendant became irate, stating that Mr. Hodge owed her money and refusing to obey Officer Gary's commands. Officer Gary testified that he and other officers had to force the Defendant's arms and hands behind her back to handcuff her. As he escorted the Defendant to a patrol car, she attempted to kick Officer Gary several times. The Defendant also tried to grab Officer Gary's stomach, belt, and groin. Once they got to the patrol car, the Defendant refused to sit down. Regarding what happened next, Officer Gary stated:

---

[1] Throughout the record, the Defendant's first name is spelled alternatively "Cecelia" and "Cecilia." For purposes of this appeal, we will use the spelling listed in the indictment, "Cecilia."

[2] In a separate indictment, the Defendant was charged with aggravated assault and theft under $500; these charges stemmed from the reported robbery. The Defendant was acquitted of those offenses during the same trial as the instant case.

2

We're trying to get her into the car and she turned and just out of nowhere just spit in my face and it was so much spit that not only did it hit my face and go across my face and my glasses and my nose, but it went on my partners as well.

Officer Gary testified that he was concerned and worried when the Defendant's spit landed in his eyes and mouth because of the potential that he could contract a disease from the Defendant's spit. After spitting on the officers, the Defendant continued to "thrash and kick around," and Officer Gary had to hold her until other officers could get a leg restraint device to keep the Defendant from kicking the inside of the car.

Once the Defendant was restrained inside the patrol car, Officer Gary called his supervisor to the scene and contacted the police department's health and safety office. Officer Gary explained that, any time there is an incident in which an officer is possibly exposed to a communicable infectious disease, the health and safety office makes arrangements for testing for communicable diseases. Officer Gary and his partners were instructed to take the Defendant to the hospital to be tested for hepatitis; once at the hospital, however, the Defendant refused to submit to the test.

Officer Gary testified that he and the other officers who took the Defendant into custody were in uniform and it was obvious they were police officers. He testified that officers did nothing to hurt the Defendant, she did not suffer any physical injuries, and her behavior was "unnecessary."

Officer Lorenzo Gianaroli, who also responded to A1-Express, testified that when he arrived at the scene, the Defendant was standing outside the store. Mr. Hodge spoke to Officer Gianaroli and identified the Defendant as the former employee who had robbed him. Officer Gianaroli explained that when he approached the Defendant to take her into custody, she became combative and irate. She started fighting the officers when they asked her to put her hands behind her back. Officer Gianaroli recalled that the Defendant was "swinging her arms, cussing at us, and trying to kick." Along with other officers, Officer Gianaroli had to physically restrain the Defendant, put her hands behind her back, and place handcuffs on her. As they walked the Defendant to a squad car, she tried to grab Officer Gianaroli's gun belt. The Defendant then refused to sit down in the squad car, even after several verbal commands from the officers. Officer Gianaroli testified that while attempting to physically assist the Defendant in sitting down, the Defendant turned around to face him and "with a mouth full of spit," spit in his face. He recalled that the Defendant spit on his mouth and nose area and that this caused him to feel concerned because he did not know if she had any kind of infectious disease. The officers were able to get the Defendant into the car but she continued kicking at them, and they were forced to use leg restraints on the Defendant for everyone's protection.

3

Officer Manta Massey testified that she also assisted in the Defendant's arrest. Officer Massey recalled that when she arrived at A1-Express, the Defendant was standing outside the store. When the officers attempted to place the Defendant under arrest, she became combative and refused to cooperate. Officer Massey testified that the Defendant began yelling and refused to put her hands behind her back to be handcuffed. She also began kicking at the officers. As they tried to put the Defendant in a patrol car, the Defendant spit on the left side of Officer Massey's face by her eye and on her cheek. Officer Massey testified that she was shocked and disgusted when the Defendant spit on her. She also feared that the Defendant might be carrying diseases or illnesses that she could contract through the spit. Once inside the squad car, the Defendant started kicking again, and the officers had to use leg restraints on the Defendant to keep her from hurting herself or the officers. Officer Massey transported the Defendant to the hospital to be tested for infectious diseases.

Lieutenant Paul Wright of the Memphis Police Department testified that on December 2, 2011, he received a call from officers Gary, Gianaroli, and Massey, informing him that they had been involved in a resisting incident with a suspect. The officers informed Lieutenant Wright that the Defendant had spit in their faces. When he arrived on the scene, Lieutenant Wright spoke to the Defendant, who was sitting in the back of a patrol car. Lieutenant Wright recalled that the Defendant was extremely agitated and was cursing at the officers. The Defendant openly admitted that she spit on the officers, saying that the male officers should not have touched her and that was why she spit on them. The Defendant said that she used to work for Mr. Hodge and that "it was a money dispute." She said that she should not have been arrested because she did not do anything wrong. The Defendant complained of neck and back injuries although Lieutenant Wright did not see any injuries on her.

Lieutenant Wright testified that he wanted the Defendant's blood drawn to make sure that the officers had not been exposed to any communicable diseases, and he instructed Officer Massey to transport the Defendant to the hospital and told her he would follow. He stated the Defendant was extremely agitated when she arrived at the hospital:

> I mean she was off the chain angered with being brought to the Med and having to wait all the time that she was sitting there. She felt like she should be processed and given a bond at that time. She cursed. She screamed. Yelled out profanity at the officers. She boasted about spitting in the officer's face, saying, yeah, I spit in their face, I did it because they shouldn't have put their motherf***ing hands on me. She banged her head up against a wall. She was on a gurney and she had her arms shackled and her legs shackled and she was just shaking the gurney, banging her head up against the wall, banging her body up against the wall, and she caused the light fixture in the Med to drop

4

out of the ceiling and we had to have Med maintenance come around and repair that.

Based upon this testimony, the jury found the Defendant guilty of three counts of assault and resisting arrest.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain her convictions because the proof is "uncontradicted that the [Defendant's] action was only for the purpose of resisting an illegal arrest." The Defendant asserts that her intent was not to commit an assault upon the officers and that, in order to be guilty of assault, she must have had the specific intent to do bodily harm. The State responds that the evidence is sufficient. We agree with the State.

The applicable standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and the Appellant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

In a jury trial, the weight and credibility given to the testimony of witnesses, as well as the reconciliation of conflicts in that testimony, are questions of fact best determined by the jury, since they saw and heard the witnesses, and by the trial judge, who concurred in and approved the verdict. Bland, 958 S.W.2d at 659. This Court will not reweigh the evidence. Id. On review, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

As relevant in this case, a person commits assault who "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (2011). "Bodily injury" includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty. Tenn. Code Ann. § 39-11-106 (a)(2) (2011).

5

Concerning the offense of resisting arrest, Tennessee Code Annotated section 39-16-602 provides, in pertinent part:

> It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn. Code Ann. § 39-16-602(a) (2011). Force is defined as "compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." Tenn. Code Ann. § 39-11-106(a)(12) (2011); see State v. Daniel M. Tidwell, No. 01C01-9807-CC-00288, 1999 WL 436840, at *2 (Tenn. Crim. App. June 30, 1999), perm. app. denied (Tenn. Jan. 3, 2000); State v. Edward Iroghuehi Isibor, No. 01C01-9610-CC-00441, 1997 WL 602945, at *2 (Tenn. Crim. App. Sept. 30, 1997), perm. app. denied (Tenn. Aug. 3, 1998). Unless a defendant is claiming self-defense against excessive force from officers, see Tenn. Code Ann. § 39-11-611(e), "[w]hether the arrest was or was not supported by probable cause is not determinative as to whether defendant resisted arrest." Edward Iroghuehi Isibor, 1997 WL 602945 at *3. Additionally, outside the context of self-defense, it is not a defense to resisting arrest that the arrest was unlawful. See Tenn. Code Ann. § 39-16-602(b) (2011).

We find that the evidence, when considered in the light most favorable to the State, is sufficient to support the Defendant's convictions for three counts of assault. As officers Gary, Gianaroli, and Massey attempted to put the Defendant into the patrol car, the Defendant spit in the officers' faces, causing them to reasonably fear imminent bodily injury. Officer Gary testified that "it was so much spit that not only did it hit my face and go across my face and my glasses and my nose, but it went on my partners as well." He testified that he was concerned and worried when the Defendant's spit landed in his eyes and mouth because of the potential that he could contract a disease from through the spit. Officer Gary contacted the police department's health and safety office, and because of the possibility that they had been exposed to a communicable infectious disease, the officers were instructed to take the Defendant to the hospital to be tested for hepatitis.

Officer Gianaroli likewise testified that while attempting to get the Defendant to sit down, the Defendant turned around and spit in his face. The Defendant's spit landed on his mouth and nose area, and Officer Gianaroli was concerned for his health because he did not know if the Defendant had any kind of infectious disease. Officer Massey also testified that, before being placed in the patrol car, the Defendant spit in her face. The spit landed on her left cheek by her left eye. Officer Massey stated that she was afraid that she might have contracted a disease or illness from the Defendant through the Defendant's spit.

6

We conclude that this evidence is sufficient to support the Defendant's convictions for three counts of assault. We acknowledge that our supreme court, borrowing from tort law, has previously listed "spitting in one's face" as an example of "extremely offensive or provocative contact" under Tennessee Code Annotated section 39-13-101(a)(3). See State v. Smiley, 38 S.W.3d 521, 525 (Tenn. 2001). Under the facts of this case, however, where there was testimony that the officers did not know the Defendant and that the Defendant's spit went into the officers' eyes and mouths, we find that the officers reasonably feared imminent bodily injury under Tennessee Code Annotated section 39-13-101(a)(2).

The Defendant argues that the evidence is insufficient to show that she *intended* to commit an assault against the officers, but we disagree. The Defendant's actions were clearly intentional as she admitted to Lieutenant Wright that she spit in the officers' faces because the male officers "shouldn't have never [sic] touched her." In any event, as pointed out by the State, proof of the culpable mental state of intentional is not necessary for a conviction for assault under Tennessee Code Annotated section 39-13-101(a)(2). The State could prove that the Defendant committed an assault by acting knowingly. See Tenn. Code Ann. § 39-13-101(a)(2) (2011).

Turning to the Defendant's conviction for resisting arrest, we likewise find that the evidence is sufficient to sustain the conviction. The proof shows that when three uniformed officers told the Defendant that she was under arrest and instructed her to put her hands behind her back, the Defendant became combative. The Defendant obstructed her arrest by refusing to put her arms behind her back. She began swinging her arms, kicking and cussing at the officers. The three officers had to physically restrain the Defendant and force her arms behind her back to put handcuffs on her. As the officers attempted to get the Defendant into the patrol car, the Defendant grabbed at the officers' belts and groin area. The Defendant continued to resist arrest once she was placed into the patrol car. She started kicking inside the patrol car, and the officers had to use leg restraints to keep her from hurting herself or the officers.

The Defendant contends that she resisted the officers because she believed it to be an illegal arrest. However, it is not a defense to resisting arrest that the arrest was unlawful, unless the person acted in self-defense. See Tenn. Code Ann. § 39-16-602(b) (2011). The Defendant does not claim that she was acting in self-defense, and the proof would not substantiate such a claim if raised.

Based upon the foregoing, we conclude that the evidence is more than sufficient to support the Defendant's convictions, and the Defendant is not entitled to relief.

7

## III.  Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE